FILED
DISTRICT COURT OF GUAM
DEC 22 2006
MARY L.M. MORAN
CLERK OF COURT

1  minchulkimpet

2  LEONARDO M. RAPADAS
   United States Attorney
3  ROSETTA M. SAN NICOLAS
   Assistant U.S. Attorney
4  Suite 500, Sirena Plaza.
   108 Hernan Cortez Ave.
5  Hagåtña, Guam 96910
   PHONE: 472-7332
6  FAX: 472-7334

7  Attorneys for the United States of America

IN THE UNITED STATES DISTRICT COURT

FOR THE TERRITORY OF GUAM

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | MAGISTRATE CASE NO. 06-00032 |
| Plaintiff, | ) | |
| vs. | ) | **PETITION FOR WRIT OF REMOVAL** |
| MIN CHUL KIM, aka MICHAEL KIM, | ) | |
| Defendant. | ) | |

Petitioner, United States Attorney for the District of Guam, respectfully shows this Court that:

1. On November 29, 2006, the United States Attorney's Office, for the Southern District of New York filed an Indictment charging the defendant with Conspiracy, Mail Fraud and wire fraud in violation of Title 18, United States Code, Sections 2, 371, 1341 and 1343;

2. On November 29, 2006, U.S. Magistrate Judge Ellis for the U.S. District Court for the Southern District of New York, issued a no bail warrant of arrest for the defendant to be brought to the Southern District of New York to answer charges of the indictment. A copy of the indictment and warrant for arrest are attached and incorporated herein as Exhibit 1.

3. On December 21, 2006, the defendant arrived on Guam and was arrested.

WHEREFORE, petitioner prays this Court to issue a writ of removal pursuant to Rule 5(c) for said defendant from the District of Guam to the Sothern District of New York.

DATED this 21st day of December 2006.

LEONARDO M. RAPADAS
United States Attorney
Districts of Guam and NMI

By: ROSETTA SAN NICOLAS
Assistant U.S. Attorney

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA              :    UNDER SEAL

   - v -                             :    INDICTMENT

MIN CHUL KIM,                         :    06 Cr.
   a/k/a "Michael Kim,"
                                      :
                Defendant.
                                      :
- - - - - - - - - - - - - - - - - - - - x

## COUNT ONE

(Conspiracy)

The Grand Jury charges:

### Background

1.  At all times relevant to this Indictment, the New York State Workers' Compensation Board (the "WCB") was a New York State agency charged with administering a number of New York State workers' compensation programs, including: the New York State Workers' Compensation Law; the Disability Benefits Law; the Volunteer Firefighters' Benefit Law; the Volunteer Ambulance Workers' Benefit Law; and the Workers' Compensation Act for Civil Defense Volunteers (collectively, the "Workers' Compensation Programs"). As part of its function in administering the Workers' Compensation Programs, the WCB received and processed workers' claims for benefits, employers' reports of injury, and medical reports from physicians and other health care providers. The WCB was funded through multiple sources, including through monies provided by the State of New York and assessments levied

EXHIBIT 1
Case 1:06-mj-00032    Document 1    Filed 12/22/2006    Page 3 of 20

on the insurance industry.  The WCB also received funding through a grant from the United States Department of Labor which monies were intended, in part, to assist the WCB with computer support. The WCB maintained eleven district offices, and had approximately thirty satellite service centers located across New York State. The WCB's main operations center was located in Albany, New York.

2.    At all times relevant to this Indictment, the WCB employed one or more computer systems to manage the information that the WCB needed to administer the Workers' Compensation Programs.  The computer needs of the WCB were managed by a staff of information technology ("IT") professionals, which included both full-time employees of the State of New York, as well as IT contractors hired to work on specific projects.

3.    At all times relevant to this Indictment, the WCB, as a New York State agency, employed a formal bidding process when hiring IT consultants to work on particular WCB projects. The New York State Office of General Services maintained a list of pre-approved contractors who were eligible to submit bids to provide IT consultants for particular projects.  Under the bidding process, the WCB typically released simultaneously to pre-approved contractors a formal bid solicitation document which, among other things, detailed the number of IT consultants that the WCB wanted to hire for a project, the mandatory requirements that each IT consultant must meet in order to qualify for the contract, any extra qualifications that the WCB

deemed desirable in selecting particular consultants, and the scope of the project. Contractors wishing to propose particular IT consultants to work on a particular project then were required to submit a bid to the WCB by a specified date. To assure the fairness of the process, the contractor was required to list in its bid any person or entity that the contractor had employed in an effort to influence the bidding process. A contractor submitting a bid also was required to certify as true the information provided in the bid pertaining to each particular IT consultant's qualifications. On the bid deadline, the WCB then would open the bids received, and would proceed to select the IT consultants in the manner, and using the criteria, detailed in the bid solicitation documents.

4.  From in or about November 2004, through in or about May 2005, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, was employed as an IT consultant with the WCB, working primarily out of the WCB's operations center in Albany, New York. KIM's duties included providing IT services to the WCB, as well as managing certain IT-related projects.

5.  At all times relevant to this Indictment, Company 101 Corporation of Virginia ("Company 101") was incorporated in the State of Virginia and was controlled by MIN CHUL KIM, a/k/a "Michael Kim," the defendant. At no time relevant to this Indictment was Company 101 listed as a pre-approved vendor eligible to bid for and provide IT services to New York State

agencies.

    6. At all times relevant to this Indictment, an individual referred to herein as "CC-1" was engaged in the business of assisting businesses and other organizations with their IT needs, among other ways, by providing clients with IT consultants who would assist with specified IT projects. At all relevant times, CC-1 held himself out as a partner of Company 101, and was acquainted with MIN CHUL KIM, a/k/a "Michael Kim," the defendant.

    7. At all times relevant to this Indictment, 21T Consulting, Inc. ("21T") was an information technology consulting firm located in New York, New York. Among other things, 21T was in the business of assisting businesses and other organizations with their IT needs, among other ways, by providing its clients with IT consultants to assist with specified IT projects. The New York Office of General Services listed 21T as a pre-approved vendor eligible to bid for and provide IT services to New York State agencies.

    8. At all times relevant to this Indictment, an individual referred to herein as "CC-2" served as the President of 21T and, at certain times relevant to this Indictment, was acquainted with MIN CHUL KIM, a/k/a "Michael Kim," the defendant.

### The WCB's Server Migration Project

    9. Prior to in or about 2005, the WCB's information technology needs were handled in large part using a computer

4

system provided by Novell, Inc. In or about at least 2004, the WCB commenced a process of converting from a Novell system to a system provided by Microsoft Corporation. The task of converting the WCB's computer system from the Novell system to a Microsoft system was known as the "Novell to Microsoft Windows Server Systems Migration Project," or the "Server Migration Project."

    10. As a part of his duties as an IT contractor with the WCB, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, served as the Project Manager for the Server Migration Project. Among other things, KIM was responsible for drafting the specifications for the Server Migration Project and setting Project timelines. KIM also was responsible for recommending the number of IT consultants appropriate for the Server Migration Project, setting the qualifications of the IT consultants that the WCB would hire, and drafting the bid solicitation documents to be sent to qualified contractors. The bid solicitation documents were circulated to approved contractors on or about February 11, 2005. After the bids were submitted, KIM participated in evaluating, interviewing, and selecting the IT consultants who would perform the actual computer work required by the WCB's Server Migration Project.

### The Fraudulent Scheme

    11. From on or about February 7, 2005, through in or about July 2005, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, CC-1 and CC-2, and others known and unknown, engaged

5

in a scheme to defraud the WCB out of approximately $450,000 in connection with the WCB's Novell to Microsoft Windows Server Systems Migration Project.

12. As a part of the fraudulent scheme, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, entered into a secret arrangement with CC-1 whereby KIM agreed to use his position with the WCB to influence the WCB to hire certain IT consultants that KIM and CC-1 had selected for the WCB's Server Migration Project. KIM and CC-1 agreed that they would share the profits received if KIM successfully caused the WCB to hire the IT consultants that KIM and CC-1 had selected.

13. As a part of the fraudulent scheme, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, provided CC-1 with a confidential "Project Proposal" for the "Novell to Microsoft Windows Server System Migration," which document was internal to the WCB and was not to be provided to potential bidders for the Server Migration Project. The Project Proposal, among other things, detailed the WCB's internal estimates relating to the expected costs of hiring the IT consultants needed for the Server Migration Project.

14. As a further part of the fraudulent scheme, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, and CC-1, in a further effort to ensure that the IT consultants that CC-1 selected would be chosen to work on the Server Migration Project, falsified the resumes of one or more of the IT consultants,

6

falsely representing that the IT consultants had certain IT-related credentials that the consultants in fact did not have.

15. As a further part of the fraudulent scheme, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, entered into a secret arrangement with CC-2, whereby CC-2 agreed that his/her company, 21T (a company which, unlike Company 101, was on New York's list of pre-approved contractors), would submit a bid to provide IT consultants to work on the WCB's Server Migration Project. CC-2 further agreed that 21T, as part of its bid, would propose that WCB hire the IT consultants that KIM and CC-1 selected for the Server Migration Project. KIM and CC-2 agreed that they would split the profits received if the WCB hired the IT consultants proposed in the 21T bid, and that 21T would then pay KIM's share of the profits through KIM's company, Company 101.

16. As a further part of the fraudulent scheme, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, caused CC-2 to submit a bid to the WCB, on behalf of 21T, to provide IT consultants to work on the WCB's Server Migration Project. In that bid, CC-2 proposed that the WCB hire the IT consultants that CC-1 had selected for the project. CC-2 failed to disclose in 21T's bid documents that 21T had used KIM in an effort to influence the bidding process, and falsely certified as true the information the CC-2 provided concerning the qualifications of the proposed IT consultants.

17. As a further part of the fraudulent scheme, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, used his position as the Project Manager of the Server Migration Project to select two of the three IT consultants 21T proposed in it bid. Under the proposed contract between the WCB and 21T, WCB would have paid 21T a total of $960,000 over the life of the Server Migration Project contract. Under the arrangements between KIM, CC-1 and CC-2, KIM expected to make a profit of approximately $176,000 from the fraudulent scheme; CC-1 expected to make a profit of approximately $80,000 from the fraudulent scheme; and 21T expected to make a profit of approximately $196,000 from the fraudulent scheme.

18. In or about late April 2005 or early May 2005, the State of New York became aware of aspects of the fraudulent scheme, and commenced steps to cancel the contract between the WCB and 21T relating to the provision of IT consultants for the Server Migration Project. MIN CHUL KIM, a/k/a "Michael Kim," the defendant, and CC-1, then took steps to conceal the fraud and to continue the scheme. These actions included: (i) falsely denying to a representative of the WCB that KIM had a relationship with 21T, (ii) instructing CC-2 not to disclose any information about their arrangements to the WCB, (iii) advising one or more of the proposed IT consultants how to falsely answer questions posed by the WCB regarding the Server Migration Project.

## Statutory Allegation

19.   From on or about February 7, 2005, through in or about July 2005, in the Southern District of New York and elsewhere, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, CC-1 and CC-2, and others known and unknown, unlawfully, willfully, and knowingly did combine, conspire, confederate, and agree together and with each other to commit offenses against the United States, to wit, to violate Sections 666, 1341 and 1343 of Title 18, United States Code.

20.   It was a part and an object of the conspiracy that MIN CHUL KIM, a/k/a "Michael Kim," the defendant, being an agent of an organization that received in a one-year period benefits in excess of $10,000 under a Federal program involving a grant, contract, subsidy, loan, guarantee, insurance, or other form of federal assistance, to wit, the New York State Workers' Compensation Board, CC-1 and CC-2, and their co-conspirators, unlawfully, willfully, and knowingly, would and did obtain by fraud and intentionally misapply, property that is valued at $5,000 and more and is owned by and under the care, custody and control of such organization, in violation of Title 18, United States Code, Section 666.

21.   It was further a part and an object of the conspiracy that MIN CHUL KIM, a/k/a "Michael Kim," the defendant, CC-1 and CC-2, and their co-conspirators, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme

9

and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, for the purpose of executing such scheme and artifice, and attempting so to do, would and did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service and would and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and would and did take and receive therefrom, such matters and things, and would and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, such matters and things, in violation of Title 18, United States Code, Section 1341.

22. It was further a part and an object of the conspiracy that MIN CHUL KIM, a/k/a "Michael Kim," the defendant, CC-1 and CC-2, and their co-conspirators, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, in violation of Title 18, United States Code, Section 1343.

## Overt Acts

23. In furtherance of said conspiracy and to effect the illegal objects thereof, the following overt acts, among others, were committed in the Southern District of New York and elsewhere:

    a. On or about February 7, 2005, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, sent to CC-1 an electronic mail message that crossed state lines in which KIM asked CC-1 to provide resumes for three IT consultants for the WCB's Server Migration Project, and advised that he could "tailor the contract requirements to their specific certifications/experience" and that he could modify "add or subtract job requirements as needed" "[s]o that only the applicants that you provide stand the highest probability of meeting contract requirements."

    b. On or about February 9, 2005, KIM and CC-1 spoke over the telephone, during which conversation KIM advised CC-1 that he would do everything in his power to hire the IT consultants that he and CC-1 had selected for the WCB's Server Migration Project, and that he personally would be one of the principal evaluators of the candidates' technical experience and would be conducting the interviews of the candidates.

    c. On or about February 9, 2005, KIM and CC-2 spoke over the telephone, and agreed that 21T would submit a bid for the WCB's Server Migration Project; that, as part of that bid, 21T would propose that the WCB hire the IT consultants

11

proposed by CC-1; that KIM would use his control over the evaluation process to ensure that the WCB selected that IT consultants in the 21T bid; and that KIM and 21T would split the profits that 21T received through the contract.

  d. On or about February 11, 2005, CC-1 forwarded to KIM, by an electronic mail message that crossed state lines, the resume of an IT consultant that CC-1 had selected to work on the Server Migration Project.

  e. On or about February 11, 2005, KIM forwarded to CC-1, by an electronic mail message that crossed state lines, a confidential "Project Proposal" for the "Novell to Microsoft Windows Server System Migration."

  f. On or about February 15, 2005, CC-2 advised the WCB that 21T was interested in submitting a bid to provide IT consultants for the WCB's Server Migration Project.

  g. On or about February 16, 2005, KIM and CC-2 met in East Greenbush, New York, to discuss 21T's bid to provide IT consultants for the WCB's Server Migration Project.

  h. On or about February 18, 2005, KIM and CC-2 met at 21T's offices in Manhattan to discuss 21T's bid to provide IT consultants for the WCB's Server Migration Project.

  i. On or about February 22, 2005, KIM forwarded to CC-2, by an electronic mail message that crossed state lines, a resume for one of the IT consultants that 21T would propose to work on WCB's Server Migration Project.

j. On or about February 28, 2005, CC-2 sent a Federal Express package containing 21T's bid proposal from Manhattan to WCB's offices in Albany, New York.

k. On or about March 1, 2005, KIM and a WCB employee reviewed the bids for the Server Migration Project, and conducted an initial technical evaluation of those bids.

l. On or about March 4, 2005, KIM caused the WCB to select for the Server Migration Project two of the three IT consultants proposed in 21T's bid.

m. On or about March 8, 2006, KIM sent to CC-2 an electronic mail message that crossed state lines in which he discussed how he and CC-2 would split the profit made with respect to the two 21T IT consultants selected to work on the Server Migration Project.

n. On or about June 29, 2005, KIM sent a WCB employee an electronic mail message that crossed state lines in which he represented that he had no relationship to 21T.

o. On or about July 13, 2005, CC-1 told one of the IT consultants that the WCB had selected for the Server Migration Project that the IT consultant could deny knowledge of the fraudulent scheme.

(Title 18, United States Code, Section 371.)

13

## COUNT TWO

(Mail Fraud)

The Grand Jury further charges:

24. The allegations in paragraphs 1-18 and 23 are repeated, re-alleged and reincorporated as if set forth fully herein.

25. From on or about February 7, 2005, through in or about July 2005, in the Southern District of New York and elsewhere, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to defraud the WCB, for the purpose of executing such scheme and artifice and attempting so to do, did place in post offices and authorized depositories for mail matter, matters and things to be sent and delivered by the Postal Service and did deposit and cause to be deposited matters and things to be sent and delivered by private and commercial interstate carriers, and did take and receive therefrom, such matters and things, and did knowingly cause to be delivered by mail and such carriers according to the directions thereon, to wit, KIM caused CC-2, while in Manhattan, to send to the WCB, by Federal Express, a package containing 21T's bid to provide IT consultants for the WCB's Server Migration Project.

(Title 18, United States Code, Sections 1341 and 2.)

14

## COUNT THREE

(Wire Fraud)

The Grand Jury further charges:

26. The allegations in paragraphs 1-18 and 23 are repeated, re-alleged and reincorporated as if set forth fully herein.

27. From on or about February 7, 2005, through in or about July 2005, in the Southern District of New York and elsewhere, MIN CHUL KIM, a/k/a "Michael Kim," the defendant, unlawfully, willfully, and knowingly, having devised and intending to devise a scheme and artifice to defraud, and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, to wit, a scheme to defraud the WCB, did transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice to defraud, to wit, on multiple occasions, KIM sent electronic mail messages to CC-2 discussing 21T's bid to provide IT consultants for WCB's Server Migration Project, which messages traveled from KIM's computer in

15

New York and elsewhere, to one or more computers located in California, and then to CC-2's computer in New York.

(Title 18, United States Code, Sections 1343 and 2.)

_____
FOREPERSON

_____
MICHAEL J. GARCIA AD
United States Attorney

16

Form No. USA-33s-274 (Ed. 9-25-58)

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

**UNITED STATES OF AMERICA**

- v -

**MIN CHUL KIM,**
  a/k/a "Michael Kim,"

  Defendant.

### INDICTMENT
### 06 Cr. ___

(Title 18, United States Code, Sections
371, 1341, 1343 & 2)

MICHAEL J. GARCIA
United States Attorney.

**A TRUE BILL**

*[signature]*
Foreperson.

CR 112 (Rev. 3/92)

**WARRANT FOR ARREST**

| United States District Court | DISTRICT | SOUTHERN DISTRICT OF NEW YORK |
|---|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>MIN CHUL KIM,<br>a/k/a "Michael Kim" | DOCKET NO. | **06 CRIM. 1106** |

**06 CRIM. 1106**

| | NAME AND ADDRESS OF INDIVIDUAL TO BE ARRESTED |
|---|---|
| | MIN CHUL KIM,<br>a/k/a "Michael Kim" |
| WARRANT ISSUED ON THE BASIS OF:<br>☐ Order of Court<br>x Indictment ☐ Information ☐ Complaint | |
| TO:<br>UNITED STATES MARSHAL OR ANY<br>OTHER AUTHORIZED OFFICER | DISTRICT OF ARREST |
| | CITY |

YOU ARE HEREBY COMMANDED to arrest the above-named person and bring that person before the nearest available magistrate to answer to the charge(s) listed below.

### DESCRIPTION OF CHARGES

Conspiracy, mail fraud, wire fraud

| IN VIOLATION OF | UNITED STATES CODE TITLE 18 | SECTION 371, 1341, 1343 & 2 |
|---|---|---|
| BAIL FIXED BY COURT | OTHER CONDITIONS OF RELEASE | |
| ORDERED BY<br>RONALD L. ELLIS<br>United States Magistrate Judge<br>Southern District of New York | SIGNATURE (JUDGE/MAGISTRATE)<br>/s/ Ronald L. Ellis | DATE<br>NOV 29 2006 |
| CLERK OF COURT<br>J. MICHAEL McMAHON | (BY) DEPUTY CLERK | DATE ISSUED |

### RETURN

This warrant was received and executed with the arrest of the above-named person.

| DATE RECEIVED | | |
|---|---|---|
| DATE EXECUTED | NAME AND TITLE OF ARRESTING OFFICER | SIGNATURE OF ARRESTING OFFICER |

United States Judge or Judge of a State Court of Record

TOTAL P.02